## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETROLEUM & FRANCHISE CAPITAL LLC, | : : | CIVIL ACTION NO. 3:15-CV-00156 (JCH) |
| Plaintiff, | : : | |
| v. | : : | |
| TEJANY PETROLEUM NAPERVILLE LLC et al., | : : | AUGUST 2, 2016 |
| Defendants. | : | |

## RULING RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 31)

### I.   INTRODUCTION

This is a diversity action filed by plaintiff Petroleum & Franchise Capital, LLC ("PFC") against defendants Tejany Petroleum and Store Naperville, Inc., Tejany Petroleum Naperville, LLC, Tejany Petroleum LLC, Serena Management Group, Nooruddin Sadruddin,[1] and Farida Sadruddin[2] (collectively, "Tejany"). See Compl. (Doc. No. 1). PFC seeks damages for an alleged breach of contract by Tejany. See id. PFC has filed a Motion for Summary Judgment that is currently pending before the court. See Pl.'s Mot. for Summ. J. (Doc. No. 31). Tejany filed an Opposition to PFC's Motion, see Defs.' Opp (Doc. No. 41), to which PFC timely replied, see Pl.'s Reply to Defs.' Opp. to Pl.'s Mot. for Summ. J. ("Pl.'s Reply") (Doc. No. 42).

For the reasons that follow, the court now **GRANTS** PFC's Motion for Summary Judgment (Doc. No. 31).

---

[1] By joint stipulation of the parties, PFC's claim against defendant Nooruddin Sadruddin in his personal capacity has been dismissed with prejudice. See Stipulation of Dismissal (Doc. No. 30).

[2] The parties note that the Complaint was "inadvertently captioned 'Farina Sadruddin,' though the correct individual's name is 'Farida Sadruddin.'" Pl.'s Mem. of Law in Supp. of Summ. J. ("Pl.'s Mem.") (Doc. No. 32); see also Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. ("Defs.' Opp.") at 1 (Doc. No. 41). The Clerk is directed to correct the case caption.

## II.   FACTUAL BACKGROUND[3]

This case arises out of a Note and Security Agreement that was originally executed between the parties in March 2008.  See Pl.'s Local Rule 56(a)1 Statement ("Pl.'s L.R. 56(a)1 Stmt.") at 1 ¶ 1 (Doc. No. 33).  The original amount of the Note was $2,587,000.  See id.  The parties twice amended the Note and Security Agreement, in October, 2010, and October, 2011.  See id. at 2 ¶¶ 4-5.  The amount of the Second Amended Note and Security Agreement was $2,811,895.42.  See Form 26(f) Report of Parties' Planning Meeting ("Rule 26(f) Report") at 3 ¶ 2 (Doc. No. 17).  The terms of that agreement contained payment obligations.  See Defs.' Local Rule 56(a)2 Statement (Defs.' L.R. 56(a)2 Stmt.") at 2 ¶ 6 (Doc. No. 41-3).  Tejany has not made all of the payments required by the parties' agreement.  See id. at 2 ¶ 7.

## III.   STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present such evidence as would allow a jury to find in his favor, see Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

---

[3] Unless otherwise noted, the parties have indicated that these facts are undisputed, either in their Statement of Undisputed Facts accompanying their Rule 26(f) Report (Doc. No. 17), or by statements in their respective Local Rule 56(a) filings (Doc. Nos. 33 & 41-3).  Additional facts alleged by the parties, particularly facts Tejany contends are in dispute, are discussed when necessary in the analytical section of this Ruling.  See Discussion, infra at 3-24.

In assessing the record to address whether there are material issues of fact, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised, on the basis of the evidence presented, the question must be left to the finder of fact.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV.    DISCUSSION

PFC has filed the pending Motion because it believes "there is no genuine issue of material fact that [Tejany] . . . breached the contract they entered into with [PFC]," and, as a result, "PFC is entitled to judgment as a matter of law."  Pl.'s Mem. at 1 (Doc. No. 32).  In response, Tejany argues that PFC is not entitled to summary judgment because "[g]enuine issues of material fact exist concerning [Tejany's] second, third, fourth and fifth affirmative defenses."  Defs.' Opp. at 1 (Doc. No. 41).

It is well-settled that, under Connecticut law,[4] the "elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages."  Meyers v. Livingston, Adler, Pulda, Meiklejohn and Kelly, P.C., 311 Conn. 282, 291 (2014).  Tejany does not assert that

---

[4] The Note and Security Agreement contain a Connecticut choice of law clause.  See Note and Security Agreement at 20 (Doc. No. 32, Ex. A).  The parties have not disputed the enforceability of this choice of law provision, and both parties consistently cite to Connecticut cases in their briefing.  See, e.g., Pl.'s Mem. at 3 (Doc. No. 32); Defs.' Opp. at 6 (Doc. No. 41).  In the absence of any dispute on this issue, the court will also generally look to Connecticut law.

there are genuine issues of material fact with respect to any of these elements, and the court agrees that the undisputed facts establish that these elements are met in this case.  See Pl.'s L.R. 56(a)1 Stmt. (Doc. No. 33); Defs.' L.R. 56(a)2 Stmt. (Doc. No. 41-3); Rule 26(f) Report (Doc. No. 17).  Thus, the sole issue currently before the court is whether there are genuine issues of material fact with respect to one or more of the affirmative defenses to a breach of contract action raised by Tejany such that PFC's Motion for Summary Judgment should be denied.

Tejany raised six affirmative defenses in their Answer:  (1) the failure of the Complaint to state a claim upon which relief may be granted; (2) unconscionability; (3) the doctrine of unclean hands; (4) the doctrine of estoppel; (5) PFC's failure to satisfy a condition precedent; and (6) the discharge of any debt owed by Nooruddin Sadruddin in a personal bankruptcy action.  See Defs.' Answer and Affirmative Defenses at 5 (Doc. No. 22).  In their Opposition to the pending Motion, however, Tejany asserts there are only "[g]enuine issues of material fact . . . concerning [Tejany's] second, third, fourth and fifth affirmative defenses."  Defs.' Opp. at 1 (Doc. No. 41).[5]  The court will consider each of these four special defenses separately and in turn.

_____

[5] The two defenses not argued by Tejany in their Opposition to the pending Motion appear to be either moot or clearly without merit.  The first of these defenses—that the Complaint fails to state a claim upon which relief may be granted—is normally, and most appropriately, resolved through a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Derisme v. Hunt Leibert Jacobson P.C., 880 F. Supp. 2d 339, 353 (D. Conn. 2012) (citing Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984)).  In any event, in light of the fact that Tejany does not dispute that the elements for a breach of contract claim under Connecticut law are met by the facts of this case, any contention that the Complaint fails to state a claim upon which relief could be granted would be without merit.

The second of the defenses not pressed by Tejany in their Opposition to the pending Motion, namely that any debt owed by Nooruddin Sadruddin has been discharged in a personal bankruptcy action, has been mooted by virtue of the fact that all claims against Nooruddin Sadruddin in his personal capacity have been dismissed, with prejudice, from this action.  See Stipulation of Dismissal (Doc. No. 30).

A.      Unconscionability

Tejany's first affirmative defense is that the Note and Security Agreement, as modified, is unconscionable.  The unconscionability of a contract "is a matter of law to be decided by the court based on all the facts and circumstances of the case." Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80, 87 (1992) (internal quotations and citations omitted).  "The classic definition of an unconscionable contract is one 'which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" Bender v. Bender, 292 Conn. 696, 731-32 (2009) (quoting Smith v. Mitsubishi Motors Credit of America, Inc., 247 Conn. 342, 349 (1998)).  Under Connecticut law, "[t]he doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made." Id. at 732 (internal quotations and citation omitted).  However, under some circumstances, a showing of substantive unconscionability alone may make a contract unenforceable.  See Smith, 247 Conn. at 353.[6]  The doctrine of substantive unconscionability is "intended to prevent oppression," whereas the doctrine of procedural unconscionability is directed at "prevent[ing] unfair surprise." Id. at 349 (citing Cheshire Mortgage Serv., Inc., 223 Conn. at 88-89).  Put another way, "[s]ubstantive unconscionability focuses on the content of the contract, as distinguished from procedural unconscionability, which focuses on the process by which the allegedly offensive terms found their way into the agreement." Cheshire Mortgage Serv., Inc.,

---

[6] It is not clear whether a showing of procedural unconscionability alone would ever be sufficient to render a contract unenforceable under Connecticut law.  See Smith, 247 Conn. at 353 n.10.

223 Conn. at 87 n.14 (internal quotations and citation omitted).  The court will consider

separately and in turn whether there are genuine issues of material fact with respect to

procedural and substantive unconscionability.

        1.     Procedural Unconscionability

In support of their argument that the Note and Security Agreement, as modified,

are procedurally unconscionable, Tejany points out that they "played no role in the

drafting of the loan documents and had no meaningful choice in negotiating its terms."

Defs.' Opp. at 8 (Doc. No. 41).  Tejany also argues that PFC's "post-execution collection

activities also have procedural unconscionability consequences," namely that PFC's

representations that it would work with Tejany to modify the Note and Security

Agreement a third time improperly induced Tejany to make payments on the loan.  Id. at

8-9.  Finally, Tejany notes that they "made over $1,200,000 in payments" on the Note

and Security Agreement, but "there has been no reduction in principal."  Id. at 9.

Neither the second nor third set of facts cited by Tejany support their contention

that the Note and Security Agreement were procedurally unconscionable.  More

specifically, the second set of facts cited by Tejany in support of its procedural

unconscionability argument, i.e., PFC's post-execution collection activities, does not

support a finding of procedural unconscionability because those events took place after

the Note and Security Agreement were entered into (and subsequently modified) by the

parties.  Post-modification facts are irrelevant to procedural unconscionability because,

as Tejany themselves note, "[c]onsideration of 'procedural unconscionability' is

generally confined to the facts surrounding the formation of the contract."  Defs.' Opp. at

8 (Doc. No. 41) (quoting Hamm v. Taylor, 180 Conn. 491, 495-96 (1980)).

The third set of facts cited by Tejany—that they have made over $1,200,000 in payments and have not seen a reduction in the principal balance of the Note and Security Agreement—also fails to establish that the process by which the Note and Security Agreement were executed was unfair.  Rather, these facts are related to the alleged unfairness of the terms of the Note and Security Agreement, particularly the interest rate provisions of those documents.  Whether the terms of a contract are fair explicitly relates to whether that contract is <u>substantively</u> unconscionable; as noted above, procedural unconscionability is a separate inquiry that "focuses on the process by which the allegedly offensive terms found their way into the agreement."  <u>Cheshire Mortgage Serv., Inc.</u>, 223 Conn. at 87 n.14 (internal quotations and citation omitted). Because the fact that Tejany has paid more than $1,200,000 without seeing the Note's principal balance reduced says nothing about the fairness of the process by which the Note and Security Agreement were executed, it also fails to fails to support Tejany's argument regarding procedural unconscionability.

Thus, the sole set of facts set forth by Tejany that could plausibly support an argument that the Note and Security Agreement were procedurally unconscionable is the first, namely that Tejany "played no role in the drafting of the loan documents and had no meaningful choice in negotiating its terms."  Defs.' Opp. at 8 (Doc. No. 41). However, the mere fact that a contract is a form contract does not establish that the process through which the contract was executed was unconscionable.  <u>See</u> <u>Smith</u>, 247 Conn. at 352.  Furthermore, the Connecticut Supreme Court has said explicitly that the principles of unconscionability do not "supersede, in toto, the duty of a contracting party to read the terms of an agreement or else be deemed to have notice of the terms."  <u>Id.</u>

at 351-52.  Relatedly, under Connecticut law, a finding of "procedural unconscionability cannot be predicated solely on the failure by a commercial party proffering a form contract to an individual party to direct the individual's attention to specific terms of a contractual agreement."  Id. at 352.  In sum, even assuming the truth of the facts Tejany proffers in support of their unconscionability argument, those facts fail to establish, as a matter of Connecticut law, that the Agreement between the parties was procedurally unconscionable.

Several additional facts bolster the court's conclusion that the Note and Security Agreement were not procedurally unconscionable at the time of execution or modification.  First, Tejany concedes they "retained counsel in connection with the loan."  Defs.' Opp. at 8 (Doc. No. 41).  Second, the Note and Security Agreement were largely between commercial entities, not between a corporation and an individual consumer.  See Note and Security Agreement at 21 (Doc. No. 32, Ex. A).  Third, the individual who signed the Note and Security Agreement on behalf of the various defendant commercial entities—Nooruddin Sadruddin—testified in his deposition for this case that he had a long history of managing commercial enterprises prior to the execution of this Note and Security Agreement (he ran a business that managed Dunkin' Donuts franchises for twenty years).  See Dep. of Nooruddin Sadruddin at 6:22-7:11 (Doc. No. 32, Ex. 2).  In other words—and in contrast to the kinds of cases in which Connecticut courts tend to find procedural unconscionability—the Note and Security Agreement in this case were executed by sophisticated, experienced commercial entities who were represented by counsel; under this set of circumstances, the mere fact that the contract at issue was a form contract, that Tejany did not

8

participate in the drafting of the documents or negotiate extensively around the documents' terms, and that Tejany did not read the Agreement or subsequent modifications prior to the closing fails to establish that there was procedural unconscionability in the execution of the Note and Security Agreement in this case.[7]

        2.    Substantive Unconscionability

Although the court concludes that there are no genuine issues of material fact on the question of procedural unconscionability, if Tejany "could establish that the [contract] was substantively unconscionable," they might still avoid liability for their alleged breach. Smith, 247 Conn. at 353. Tejany contends that two parts of the Note and Security Agreement make those documents substantively unconscionable: (1) the Note's default interest rate of 18 percent, which is "more than three times the rate of the Note," and (2) a provision in the Second Amended Note that "sought to hold Mr. Sadruddin personally liable even though such debts had been discharged as to him in his bankruptcy." Defs.' Opp. at 9 (Doc. No. 41). Tejany also notes that "[t]he net effect of the interest rate is that[,] even though Defendants made approximately $1,200,000 in payments over the life of the loan, the principal balance on the Note increased." Id.

With respect to a default interest rate of 18 percent under circumstances like those presented by this case, this court has repeatedly held that, "as a matter of law, [an] 18% default interest rate . . . is not so one-sided as to rise to the standard of

_____

[7] The court also notes that, although Tejany alleges they did not read the loan documents prior to the closing, see, e.g., Dep. of Nooruddin Sadruddin at 16:4-6 (Doc. No. 32, Ex. 2), they do not allege that this failure was due to the actions of PFC. For example, Tejany does not allege that they asked for the documents in advance of the closing and were rebuffed, or that they requested, and were denied, additional time to review the documents with their attorney prior to signing. In other words, Tejany neither alleges facts nor offers evidence that would tend to show that any deficiencies in the process by which the Note and Security Agreement were executed are attributable to PFC's bargaining position or pressure, as opposed to Tejany's carelessness.

9

unconscionability." Emigrant Mortgage Co. v. Crismara, No. 3:05-cv-1772 (JCH), 2008

WL 2551039 at *8 (D. Conn. June 23, 2008); see also Pierce v. Emigrant Mortgage Co.,

No. 3:04-cv-1767 (JCH), 2007 WL 4800725 at *6 (D. Conn. Dec. 27, 2007) (same).

Ample authority from Connecticut courts supports this proposition.  For example, in

Cheshire Mortgage Serv., Inc., the Connecticut Supreme Court found that a mortgage

contract that specified an annual interest rate of 18 percent was neither procedurally nor

substantively unconscionable.  See Cheshire Mortgage Serv., Inc., 223 Conn. at 85, 94.

If an annual interest rate of 18 percent is not unconscionable under Connecticut law, a

default interest rate of 18 percent is even less likely to be so.  Similarly, in Emigrant

Mortgage Co. v. D'Agostino, the Connecticut Court of Appeals held that a defendant's

"bald assertion" that a default interest rate of 18 percent was unconscionable, "without

more, was insufficient to establish that the default interest rate . . . was unconscionable."

Emigrant Mortgage Co. v. D'Agostino, 94 Conn. App. 793, 803 (2006).  Finally, as the

court has noted in other cases, unpaid property taxes in Connecticut are subject to an

annual interest rate of 18 percent.  See C.G.S.A. § 12-146.  Although there may be

public policy considerations that could justify an 18 percent interest rate on unpaid taxes

that are different from, and would not apply to, a default interest rate of 18 percent for a

Note and Security Agreement like the one at issue in this case, "the Connecticut

legislature's imposition of an 18% rate for unpaid taxes suggests that such a rate is not

unconscionable per se."  Pierce, 2007 WL 4800725 at *6 n.1.  The court concludes that

Tejany's unsupported assertion that the 18 percent default interest rate in the Note and

Security Agreement is unconscionable fails to create a genuine issue of material fact

with respect to whether the Note is substantively unconscionable under Connecticut law.

Tejany's contention that the Note and Security Agreement are substantively unconscionable because the second modification to the Note asked Nooruddin Sadruddin to reaffirm his personal obligations under the Agreement—notwithstanding the fact that those obligations had been discharged in a personal bankruptcy—likewise fails to create a genuine issue of material fact about whether the Note and Security Agreement, as modified, are substantively unconscionable. Tejany cites no authority for the proposition that asking an individual to reaffirm a personal debt that has been discharged in bankruptcy renders the whole of an agreement that is primarily between commercial entities unconscionable. See Defs.' Opp. at 9 (Doc. No. 41). Moreover, while the inclusion of an apparently unenforceable[8] provision in the Second Modified Agreement is troubling, the court sees no reason why the remedy would not be to strike that particular provision from the contract, rather than invalidate the whole Agreement.[9] Cf. C.G.S.A. § 42a-2-302(1) (noting that, for contracts governed by the Uniform Commercial Code, the court may sever an unconscionable clause from a contract and "enforce the remainder of the contract without the unconscionable clause"); Ragone v.

---

[8] The court notes that PFC has submitted evidence they sought approval of a Reaffirmation Agreement related to Nooruddin Sadruddin's personal liability for the Note and Security Agreement as part of Nooruddin Sadruddin's personal bankruptcy. The bankruptcy court declined to approve the Reaffirmation Agreement. See Order on Reaffirmation Agreement (Doc. No. 32, Ex. 4). Because the bankruptcy court's rejection of the Reaffirmation Agreement took place prior to the second modification of the Note and Security Agreement, it appears that the personal liability provision of the Second Modified Agreement would not be enforceable. Of course, nothing in the bankruptcy laws "prevents a debtor from voluntarily repaying any debt." 11 U.S.C. § 524(f).

[9] In fact, the Note and Security Agreement contains a partial invalidity provision that states that, "[i]f any provision of this Note is held to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate this Note as a whole." Note and Security Agreement at 19 (Doc. No. 32, Ex. A).

Atl. Video at Manhattan Center, 595 F.3d 115, 124-25 (2d Cir. 2010) (noting that "the appropriate remedy when a court is faced with a plainly unconscionable provision of an arbitration agreement . . . is to sever the improper provision of the arbitration agreement, rather than void the entire agreement" (internal quotations and citation omitted)).  In any event, actual severance is unnecessary, because PFC is not seeking damages from Nooruddin Sadruddin; as PFC notes, Nooruddin Sadruddin has been dismissed, with prejudice, from this action.  See Stipulation of Dismissal (Doc. No. 30).

In sum, neither Tejany's "bald assertion of unconscionability" on the basis of a default interest rate of 18 percent, D'Agostino, 94 Conn. App. at 803, nor the fact that the Second Modified Agreement may have contained an unenforceable provision regarding the personal liability of Nooruddin Sadruddin, create a genuine issue of material fact with respect to whether the Note and Security Agreement, as modified, are substantively unconscionable.  Because there are no genuine disputes about issues of material fact relevant to the question of procedural or substantive unconscionability, the court finds, as a matter of law, that the modified Note and Security Agreement were not unconscionable.

B.     Unclean Hands

Tejany's second affirmative defense is the doctrine of unclean hands.  "The clean hands doctrine, also referred to as the doctrine of unclean hands . . . derives from 'the equitable maxim that he who comes into equity must come with clean hands.'" Thompson v. Orcutt, 257 Conn. 301, 302 n.1 (2001) (quoting DeCecco v. Beach, 174 Conn. 29, 34 (1977)).  In essence, "where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular

12

controversy in issue." Id. at 310 (quoting <u>Bauer v. Waste Management of Connecticut, Inc.</u>, 239 Conn. 515, 525 (1996)). "Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." <u>Id.</u>  More specifically, "[t]he party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation." <u>American Heritage Agency, Inc. v. Gelinas</u>, 62 Conn. App. 711, 722 (2001) (internal quotations and citation omitted).

Tejany contends that PFC "engaged in wilful misconduct by misrepresenting to [Tejany] that it would work with [Tejany] on a modification if [Tejany] made certain payments." Defs.' Opp. at 13 (Doc. No. 41). In other words, the sole fact on which Tejany relies for its argument that PFC's breach of contract action is barred by the doctrine of unclean hands relates to Nooruddin Sadruddin's assertion that PFC "advised [him] that they would work with [Tejany] on a modification if [Tejany] made a full payment of $15,000 immediately." Aff. of Nooruddin Sadruddin at 4 ¶ 18 (Doc. No. 41-1). Nooruddin Sadruddin alleges that he arranged for this payment and subsequently supplied PFC with financial information that they requested for purposes of working out a third modification to the Note and Security Agreement. See id. at 4 ¶¶ 19-20. Nooruddin Sadruddin also contends that PFC represented that "it would be acceptable for [Tejany] to make partial payments while we worked out a deal for a modification." Id. at 4 ¶ 19. Nooruddin Sadruddin was surprised when, "contrary to [PFC's] representations that they would work with [Tejany] on a modification, [PFC] filed the instant action." Id. at 4 ¶ 20.

Even assuming <u>arguendo</u> that the facts alleged by Nooruddin Sadruddin are true, they fail to establish a genuine issue of material fact that would preclude summary judgment on the affirmative defense of unclean hands.  In fact, the doctrine of unclean hands is wholly inapplicable to this case, given that "the doctrine of unclean hands precludes only equitable relief."  <u>Drummond American LLC v. Share Corp.</u>, No. 3:08-cv-1665 (MRK), 2009 WL 3838800 at *4 (D. Conn. Nov. 12, 2009) (citing <u>Bauer</u>, 239 Conn. at 525); <u>see also</u> <u>Weiss v. Smulders</u>, 313 Conn. 227, 265 n.19 (2014) (noting that "the equitable defense of unclean hands bars only equitable relief").  PFC does not seek equitable relief in this action, but rather a legal remedy in the form of money damages for Tejany's alleged breach of contract.  <u>See</u> Compl. at 2 ¶ 8 (Doc. No. 1) ("This is an action seeking monetary relief for breach of contract . . . ."); <u>see also</u> <u>id.</u> at 5-6 (requesting relief in the form of money damages and assorted fees).  Because PFC seeks a legal remedy, the equitable defense of unclean hands is not available to Tejany in this case.

Even if the affirmative defense of unclean hands were available to Tejany, however, the court would still conclude that there are no genuine disputes about issues of material fact relevant to that defense.  As Tejany notes, application of the doctrine of unclean hands requires a showing of "wilful misconduct."  Defs.' Opp. at 12 (Doc. No. 41) (quoting <u>Ridgefield v. Eppoliti Realty Co.</u>, 71 Conn. App. 321, 335 (2002)).  In another context, the Connecticut Supreme Court has defined "wilful misconduct" as "intentional conduct designed to injure for which there is no just cause or excuse."  <u>Dubay v. Irish</u>, 207 Conn. 518, 533 (1988).  "Not only the action producing the injury but the resulting injury also must be intentional."  <u>Id.</u>  Connecticut courts appear to

recognize that this definition of wilful misconduct applies in the context of determining whether a party has raised a cognizable unclean hands defense.  See, e.g., Monetary Funding Group, Inc. v. Pluchino, 87 Conn. App. 401, 410 (2005) (implying that "wilful misconduct" means "intentional misconduct"); TD Banknorth N.A. v. Genesis Properties, LLC, No. CV085004597S, 2009 WL 323616 at *1-2 (Conn. Super. Ct. Jan. 15, 2009) (using the aforementioned definition of "wilful misconduct" in the context of assessing an unclean hands defense and noting that "[t]he failure to allege intentional conduct with the design to harm renders the special defense [of unclean hands] subject to a motion to strike").

Tejany has not alleged facts that, if proven, would show PFC engaged in wilful misconduct with respect to the events giving rise to this litigation.  Nooruddin Sadruddin's Affidavit states merely that PFC represented that "they would work with [Tejany] on a modification if [Tejany] made a full payment of $15,000 immediately"—not that PFC promised that a modification would certainly be forthcoming if a full payment was made.  Aff. of Nooruddin Sadruddin at 4 ¶ 18 (Doc. No. 41-1); see also Dep. of Nooruddin Sadruddin at 33:18-34:7 (Doc. No. 41-2) (stating that PFC told him that "[o]nly way we can talk to you, if you make the full payment by tomorrow").  There is no evidence that PFC failed to work with Tejany on a modification; in fact, the only evidence on this issue shows that PFC did work with Tejany on a possible third modification to the Note and Security Agreement in the four months between Tejany's full payment in October 2014, and the initiation of this lawsuit in February 2015.  See Aff. of Nooruddin Sadruddin at 4 ¶¶ 19-20 (Doc. No. 41-1) (noting that PFC requested, and Nooruddin Sadruddin provided, extensive financial documentation in an effort to

obtain a third modification in the months preceding this lawsuit); Dep. of Nooruddin Sadruddin at 33:22-34:2 (Doc. No. 41-2) ("They want to work with me.  They ask me all the explanations.  They ask me thousands of documentations, you know, all financial.  My personal thing, what happened.  And I was working with them, and I have attorney, you know, who was talking to them.").  Equally importantly, PFC's request for a full payment under the Note and Security Agreement, as modified, is not misconduct that injured Tejany:  as PFC notes, Tejany could not have been injured "by making a payment they were already obligated to make."  Pl.'s Reply at 7 (Doc. No. 42).  Finally, PFC's alleged misbehavior in this case is a far cry from the kinds of misconduct that Connecticut courts have found implicate the doctrine of unclean hands, such as "engag[ing] in intentional misconduct with respect to the various transactions in order to obtain excessive fees and costs," Monetary Funding Group, Inc., 87 Conn. App. at 410, or lying to a bankruptcy court trustee in a related bankruptcy proceeding, see Thompson, 257 Conn. at 313.

For the foregoing reasons, the court concludes that there are no genuine issues of material fact with respect to Tejany's affirmative defense of unclean hands.  Because the doctrine of unclean hands only applies to cases in which a party seeks equitable relief, and because PFC is seeking damages in this case, the doctrine of unclean hands does not apply.  Even if the defense of unclean hands were available, however, the court would find that there are no genuine disputes about issues of material fact with respect to the applicability of this defense.  Even assuming arguendo the truth of all the facts set forth by Tejany in support of this defense, those facts fail to establish that PFC

16

engaged in wilful misconduct that injured Tejany.  Thus, the doctrine of unclean hands will not insulate Tejany from liability in this case.

     C.    <u>Equitable Estoppel</u>

The third affirmative defense raised by Tejany is the doctrine of equitable estoppel.  "Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct."  <u>Glazer v. Dress Barn, Inc.</u>, 274 Conn. 33, 60 (2005).  Under Connecticut law, the defense of equitable estoppel has two parts:  (1) "the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief," and (2) "the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done."  <u>Id.</u> (internal quotations and citation omitted).

For their equitable estoppel argument, Tejany relies on the same facts that were previously discussed in relation to Tejany's alleged defense of PFC's unclean hands, namely that PFC "advised Mr. Sadruddin that they would work with him on a modification if [Tejany] made a full payment of $15,000 immediately."  Defs.' Opp. at 11 (Doc. No. 41).  Tejany contends that they made the requested payment, and subsequently provided financial information also requested by PFC.  <u>See id.</u>  Tejany asserts that, by filing this lawsuit, PFC failed to follow through on the modification that was promised "if [Tejany] made the requested payments in good faith and provided the necessary financial information."  <u>Id.</u>

Tejany's argument that the foregoing facts establish that PFC should be equitably estoped from pursuing this breach of contract action fails for two reasons.

First, Tejany has not alleged facts or submitted evidence that shows they "actually change[d] their position or d[id] some act to [their] injury which [they] otherwise would not have done."  Glazer, 274 Conn. at 60 (emphasis added) (internal quotations and citation omitted).  The primary change in position alleged by Tejany is "a full payment of $15,000" in October 2014.  Defs.' Opp. at 11 (Doc. No. 41).  But Tejany was already obligated to make this payment pursuant to the Note and Security Agreement, as modified, which means the payment is insufficient to support a claim of equitable estoppel because it is not something that injured Tejany and that Tejany "otherwise would not have done."  Id. (internal quotations and citation omitted); see also United States for Use of Youngstown Welding and Engineering Co. v. Travelers Indemnity Co., 802 F.2d 1164, 1168 (9th Cir. 1986) (rejecting an equitable estoppel claim where one party "ha[d] not shown how it relied to its detriment on Youngstown's endorsements, since in issuing the joint checks it did nothing that it was not already obligated to do"); Sosnowski v. Monti, No. SPWA-9303-11895, 1994 WL 133096 at *3 (Conn. Super. Ct. Mar. 15, 1994) (finding there was no change in position where a defendant made a payment that he was already obligated to make).

The fact that PFC's alleged misrepresentations did not cause Tejany to take an action they were not otherwise obligated to take distinguishes this case from the cases on which Tejany relies for its equitable estoppel argument.  For example, one of the cases on which Tejany relies, TD Bank, N.A. v. SM Phoenix Merritt 8, LLC, involved a plaintiff who made "representations of its willingness to extend the term of and make future advances" under a Note "to induce the defendant to sign the mortgage and notes."  TD Bank, N.A. v. SM Phoenix Merritt 8, LLC, No. CV106011034, 2011 WL

590442 at *4 (Conn. Super. Ct. Jan. 19, 2011).  Similarly, the other case Tejany cites,

Fleet Bank, N.A. v. Polites, involved an allegation by the defendants that "they executed

the promissory note at issue herein in reliance on the inducements and assurances of

the plaintiff that said note would be modified or restructured if payment problems

developed."  Fleet Bank, N.A. v. Polites, No. CV90-0387118, 1992 WL 77323 at *2

(Conn. Super. Ct. April 1, 1992).  The characteristic these cases share that is absent

from the present lawsuit is that, in both cases, the defendants were induced by the

plaintiffs' statements to take action that they were not otherwise obligated to take,

namely to sign a mortgage or promissory note.  The latter of these two cases is also

distinguishable on the grounds that it involved an explicit promise to modify, as opposed

to a promise to explore whether a modification might be possible.

      This last point presages the second, and wholly separate, reason Tejany's

equitable estoppel argument fails:  although Tejany contends in their briefing that PFC

"promised a modification if [Tejany] made the requested payments in good faith and

provided the necessary financial information," Defs.' Opp. at 11 (Doc. No. 41), this

statement is without citation and is not supported by the evidence Tejany submitted in

connection with their Opposition to the pending Motion.  Instead, what the evidence

submitted by Tejany shows is that PFC said that "they would work with [Tejany] on a

modification if [Tejany] made a full payment of $15,000 immediately," Aff. of Nooruddin

Sadruddin at 4 ¶ 18 (Doc. No. 41-1); see also Dep. of Nooruddin Sadruddin at 33:18-

34:7 (Doc. No. 41-2)—not that PFC "promised a modification" if Tejany made a full

payment and complied with PFC's other requests, Defs.' Opp. at 11 (Doc. No. 41).  The

evidence shows that PFC did, in fact, work with Tejany on a possible modification, as

four months elapsed between Tejany's payment in October 2014, and the initiation of this lawsuit in February 2015, during which time PFC "requested financial information from [Tejany]."  Aff. of Nooruddin Sadruddin at 4 ¶ 19 (Doc. No. 41-1); see also Dep. of Nooruddin Sadruddin at 33:20-34:7 (Doc. No. 41-2).  In other words, neither the evidence nor allegations of fact made by Tejany support an argument that PFC "d[id] or sa[id] something that [wa]s intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief," Glazer, 274 Conn. at 60 (internal quotations and citation omitted), which means there are also no genuine issues of material fact with respect to the first element of an equitable estoppel defense.

Because the action Tejany took in paying $15,000 in October, 2014,[10] did not change Tejany's position or otherwise result in Tejany being injured by virtue of performing an act that they would not have undertaken absent PFC's alleged misrepresentations, the facts alleged by Tejany, even if true, are insufficient to establish that PFC should be equitably estopped from pursuing this action under Connecticut law.  Thus, the doctrine of equitable estoppel fails as a special defense as a matter of law.

D.     Failure to Satisfy a Condition Precedent

The final affirmative defense pressed by Tejany is PFC's alleged failure to satisfy a condition precedent by failing "to provide [Tejany] with any notice prior to commencing this action."  Defs.' Opp. at 13 (Doc. No. 41).  Under Connecticut law, "[a] condition precedent is a fact or event which the parties intend must exist or take place before

---

[10] Arguably, Tejany's provision of financial information to PFC was a separate action that Tejany would not have undertaken but for PFC's representations that a modification might be possible. However, Tejany has not alleged any manner in which they were injured by the fact that they provided this financial information to PFC, which means that this action is also insufficient to establish the second element of equitable estoppel under Connecticut law.

there is a right to performance." Christophersen v. Blount, 216 Conn. 509, 512 (1990) (quoting Lach v. Cahill, 138 Conn. 418, 421 (1951)). "Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in light of the circumstances surrounding the execution of the instrument." Id. (quoting Ravitch v. Stollman Poultry Farms, Inc., 165 Conn. 135, 149 (1973)). In this case, Tejany is not arguing that PFC failed to satisfy a condition precedent to Tejany's obligation to perform on the Note and Security Agreement such that the contract is wholly unenforceable, but rather that PFC failed to satisfy a condition precedent to bringing this lawsuit, namely providing Tejany with some form of notice that PFC intended to accelerate Tejany's payment obligations. See Defs.' Opp. at 13 (Doc. No. 41).

The acceleration provision in the original Note and Security Agreement provides that, "[u]pon the occurrence of an Event of Default, at the Lender's sole option, all Obligations shall be accelerated and at once due and payable and the Lender may, without demand or legal process" exercise various rights and pursue assorted remedies. Note and Security Agreement at 14 (Doc. No. 32, Ex. A). The modifications to the Note and Security Agreement likewise contain their own acceleration provisions[11] or related waiver of notice provisions.[12] Notwithstanding these provisions of the Note

---

[11] For example, the Second Modified Agreement provides that, upon "the occurrence of a default under this Note . . . the Lender may declare all of the principal, interest and other sums which may be outstanding . . . to be immediately due and payable without further demand." Second Modified Agreement at 3 (Doc. No. 32, Ex. C).

[12] For example, the First Modified Agreement contains a waiver provision that states: "The Borrower and all others who may become liable for the payment of all or any part of the Obligations severally waive presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices of any kind." First Modified Agreement at 3 (Doc. No. 32, Ex. B).

21

and Security Agreement and the subsequent modifications, Tejany contends that, as a matter of Connecticut law, PFC was required to provide Tejany with some form of notice that it planned to exercise its option to accelerate.  See Defs.' Opp. at 13-14 (Doc. No. 41).  The court disagrees.

Tejany cites a single Connecticut Court of Appeals decision in support of their argument that PFC failed to satisfy a condition precedent by not giving notice of an intent to accelerate prior to initiating this lawsuit.  In that case, City Savings Bank of Bridgeport v. Dessoff, the Connecticut Court of Appeals noted that:

> The general rule is that where the acceleration of the maturity of a mortgage debt on default is made optional with the mortgagee, some affirmative action must be taken by him evidencing his election to take advantage of the accelerating provision, and that until such action has been taken the provision has no operation.

City Savings Bank of Bridgeport v. Dessoff, 3 Conn. App. 644, 649 (1985) (internal quotations and citation omitted).  The City Savings Bank of Bridgeport court further noted that "[t]he exercise of the option should be made in a manner clear and unequivocal, so as to leave no doubt as to the mortgagee's intention."  Id.  The proposition that an optional acceleration clause will be given effect only where the holder of the option evinces a "clear and unequivocal" intent to invoke the right of acceleration was subsequently affirmed by the Connecticut Supreme Court.  See Webster Bank v. Oakley, 265 Conn. 539, 547-48 (2003).  Tejany relies on this proposition for their argument that there are "issues of material fact . . . concerning

---

The Second Modified Agreement contains the same provision.  See Second Modified Agreement at 3 (Doc. No. 32, Ex. C).

whether [PFC] undertook an affirmative act evidencing its election to take advantage of the provision accelerating the Note."  Defs.' Opp. at 14 (Doc. No. 41).

There are several problems with Tejany's argument, but the most important one is this:  Tejany assumes that an affirmative act sufficient to invoke the optional acceleration clause must consist of some form of pre-suit notice.  See Defs.' Opp. at 13-14 (Doc. No. 41).  This is incorrect.  In fact, the Connecticut Supreme Court has explicitly held that "the institution of a foreclosure action constitutes a valid exercise of a mortgagee's acceleration right," and that no separate, pre-suit notice is required.[13] Hartford Federal Savings and Loan Ass'n v. Tucker, 196 Conn. 172, 180 (1985).  This holding in Tucker is consistent with the views of courts outside of Connecticut who have considered this question.  See, e.g., United States v. Alessi, 599 F.2d 513, 515 n.4 (2d Cir. 1979) (noting that "acceleration must consist of either notice of election to the Mortgagor or of some unequivocal overt act (such as initiating a foreclosure suit) manifesting an election" (emphasis added)); Carmichael v. Rice, 158 P.2d 290, 292 (N.M. 1948) ("There may be other possible affirmative acts other than demand or notice by which an [acceleration] option could be exercised under the language of this note;

---

[13] Of course, separate pre-suit notice would be required if the terms of the parties' agreement mandated such notice.  In this regard, the court notes that, although contractual provisions affording a borrower notice and an opportunity to cure a default within a certain number of days are not uncommon in Connecticut, see, e.g., Webster Bank, 265 Conn. at 542 n.5 (noting that the acceleration provision in the mortgage at issue in that case provided that "Lender shall give notice to Borrower prior to acceleration"); Bank of America, FSB v. Hanlon, 65 Conn. App. 577, 582-83 (2001) (same); Mase v. Riverview Realty Associates, LLC, No. CV126013389, 2014 WL 1345336 at *2 (Conn. Super. Ct. Mar. 11, 2014) (stating that the acceleration provision in the agreement in that case "requires written notice of acceleration" and affords a period of time in which to cure any default), the Note and Security Agreement and its modifications in this case do not contain provisions of this kind, see, e.g., Second Modified Agreement at 3 (Doc. No. 32, Ex. C) (stating that "[t]he Borrower and all others who may become liable for the payment of all or any part of the Indebtedness severally waive presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices of any kind" (emphasis added)).

<u>without doubt it could be exercised simply by bringing suit</u>." (emphasis added)).  There is no question that PFC exercised its option to accelerate through the Complaint filed in this case:  the Complaint clearly states that, as a result of the alleged "Events of Default under the Note, [PFC] has declared all amounts owing under the Note to be immediately due and payable," and also sets the amount of damages as "all remaining installment payments due under the Note" plus assorted fees and accrued interest. Compl. at 5 (Doc. No. 1).

Because the only issue of fact alleged by Tejany in conjunction with the affirmative defense of failure to satisfy a condition precedent relates to "whether [PFC] undertook an affirmative act evidencing its election to take advantage of the provision accelerating the Note," Defs.' Opp. at 14 (Doc. No. 41), and Connecticut law clearly establishes that the filing of this lawsuit constituted an affirmative act sufficient to invoke PFC's right to accelerate under the Note and Security Agreement, as modified, <u>see Hartford Federal Savings and Loan Ass'n</u>, 196 Conn. at 180, there are no genuine issues of material fact that would preclude the granting of summary judgment on this affirmative defense.

E.   <u>Damages</u>

In addition to arguing that PFC's Motion for Summary Judgment should be denied because there are genuine issues of material fact related to Tejany's asserted affirmative defenses, Tejany contends there are issues of material fact "as to the amount of any alleged damages."  Defs.' Opp. at 14 (Doc. No. 41).  In particular, Tejany notes that the Affidavit submitted by PFC in support of the Motion for Summary Judgment notes simply that "PFC's business records further reflect that the outstanding

balance as of September 15th is $3,321,464.39, including principal, interest and late fees." Aff. of Sean P. Dunn at 2 ¶ 12 (Doc. No. 32, Ex. 1). Tejany further points out that the amount of damages alleged in this Affidavit is different from—and inexplicably less than—the total amount of damages asserted by PFC in the Complaint. See Compl. at 5 ¶ 27 (Doc. No. 1) (stating that "Borrowers presently owe, as of January 30, 2015, . . . $3,719,431.06"). PFC has not submitted the business records on which either of these damages calculations are based, nor have they provided any explanation of the methodology used to arrive at these figures. PFC's briefing in support of its Motion for Summary Judgment is largely silent on the issue of damages.

In light of the discrepancies between the Complaint and Affidavit described above, as well as the complete absence of either an explanation of how PFC arrived at the claimed damages amount or business records that support the amount of damages PFC claims, the court agrees with Tejany that the proper amount of damages cannot be determined on the basis of the record presently before the court. Accordingly, the court will grant summary judgment to PFC only on the issue of Tejany's liability for the breach of contract, and will schedule an evidentiary hearing on the issue of damages.

## V.   CONCLUSION

For the foregoing reasons, the court concludes that there are no genuine issues of material fact with respect to either the elements of PFC's breach of contract claim or Tejany's affirmative defenses of unconscionability, unclean hands, equitable estoppel, and failure to satisfy a condition precedent. PFC is entitled to judgment as a matter of law on both the substance of its claim and on Tejany's asserted affirmative defenses. Accordingly, PFC's Motion for Summary Judgment (Doc. No. 31) is **GRANTED**.

However, because the court concludes that there are issues of fact that remain with respect to the amount of PFC's damages, a hearing on damages is necessary and will be scheduled by issuance of a separate calendar.

**SO ORDERED.**

Signed at New Haven, Connecticut, this 2nd day of August, 2016.

 /s/ Janet C. Hall_____
Janet C. Hall
United States District Judge